IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA

V.                          NO. 10-CR-50067

JAMES B. MITCHELL

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On November 27, 2012, Defendant/Movant James B. Mitchell (hereinafter "the Defendant") filed a brief in support of his amended 28 U.S.C. § 2255 motion.[1] (Doc. 139). The parties thereafter submitted briefs, and the matter is now ripe for consideration. The undersigned, being well and sufficiently advised, finds and recommends as follows with respect thereto:

**I.    PROCEDURAL BACKGROUND:**

On September 15, 2010, a twelve-count Superceding Indictment was filed (Doc. 29), wherein Defendant was charged in eleven of the counts, which included: 1) conspiracy to use an interstate facility to distribute proceeds of an unlawful activity and to promote, manage, establish, carry on and

---

[1] Defendant's initial § 2255 motion set forth seven grounds. (Doc. 87). Thereafter, Defendant filed two supplements to his motion (Docs. 97 and 108), and another memorandum of law in support of his motion. (Doc. 116). On September 7, 2012, the undersigned entered an Order, stating that the documents would not be considered, and gave Defendant until October 26, 2012, to file a single brief in support of his originally filed § 2255 motion. (Doc. 117). No other briefs, amendments, supplements, etc. were to be filed by Defendant without first seeking leave of Court. (Doc. 117). On November 27, 2012, Defendant filed his memorandum of law late, and raised nine grounds. (Doc. 139). Although it was not timely filed, the Court will address the grounds raised in Defendant's brief filed on November 27, 2012. (Doc. 139). The Court will also consider the Government's response (Doc. 160) and Defendant's Reply, which is titled "Petitioner's Response to Government Answer. (Doc. 164). However, without the Court's permission, Defendant subsequently filed a "Petitioner's Response to Government Answer on November 25, 2013 (Doc. 166), a Reply to Response filed on August 14, 2014 (Doc. 196), and a "Final Reply to Government Answer to § 2255 in re: Doc. 204" (Doc. 206), which will not be considered, as they were filed without seeking court permission.

facilitate an unlawful activity; 2) conspiracy to launder monetary instruments; 3) three counts of coercion and enticement and aiding and abetting; 4) two counts of coercion and enticement; 5) two counts of transportation for illegal sexual activity; and 6) two counts of laundering of monetary instruments,(Doc. 29), all in violation of 18 U.S.C. §§ 371, 1952(a)(1)(A),1952(a)(3)(A),2422,1956(a)(1)(A)(I), 1956(a)(1)(B)(I), 1956(h), 2422(b), 2422(a), and 2421.

On September 24, 2010, at his arraignment, Defendant was represented by his retained attorney, Erwin L. Davis, at which Defendant entered a not guilty plea.

On September 30, 2010, Mr. Davis filed a Motion to Withdraw As Counsel, stating that discovery had revealed that "the Government intends to call as a witness a previous client of this attorney, and that this attorney's continued representation of the Defendant in this case would likely result in a conflict of interest." (Doc. 43).

On October 6, 2010, attorney Greg Klebanoff filed an Entry of Appearance and Motion for Continuance on behalf of Defendant. (Doc. 47).

On October 13, 2010, the Honorable United States District Judge Jimm Larry Hendren entered a text only order, granting the Motion to Withdraw.  Judge Hendren also entered an order that same day continuing the trial in the case.  (Doc. 48).

-2-

Pursuant to a Plea Agreement, on November 23, 2010, Defendant entered a guilty plea to Count One-conspiracy to use an interstate facility to distribute proceeds of an unlawful activity and to promote, manage, establish, carry on and facilitate an unlawful activity, and Count Two-conspiracy to launder monetary instruments. (Doc. 56).

On April 11, 2011, Defendant's counsel filed a pre-sentence brief. (Doc. 65).

On June 16, 2011, Defendant appeared for sentencing, and was sentenced to one hundred twenty-six (126) months (60 months on Count One and one hundred twenty-six (126) months on Count Two), to run concurrently; 3 years of supervised release on each count to run concurrently with each other and with Case No. 11-50033-001); a $200 assessment; and a $15,000 fine. (Doc. 76).[2]

No appeal from the Judgment was taken.

## II.  GROUNDS FOR § 2255 MOTION:

Defendant raises the following grounds in his pro se brief:

Ground One: Violation of Defendant's 6th Amendment Right to Counsel of Choice (Doc. 139 at p. 8);

Ground Two: Violation of Defendant's 5th Amendment Right to Due Process - Outrageous Government Conduct and Prosecutorial

---

[2]In United States v. Mitchell, Case No. 11-50033, Judge Hendren sentenced Defendant to 12 months imprisonment, to run consecutively to the sentence imposed in this case, and three years supervised release, to run concurrently with the supervised release imposed in this case, a special assessment of $100; a fine of $1,000; and restitution of $11,131.00. (Doc. 9).

Misconduct - Interference with Defendant's attorney/client relationship and Government use of falsified evidence to induce Defendant to plead guilty (Doc. 139 at pgs. 13-14);

Ground Three: Ineffective Assistance of Counsel - Counsel failed to identify and argue the "Santos Defect" as to 18 U.S.C. §§ 1952(a)3(A) and 371 of the superceding indictment (Doc. 139 at p. 15);

Ground Four: Ineffective Assistance of Counsel - same argument as in Ground Three but with respect to 18 U.S.C. §§ 1956(a)(1)(B)(I) and 1956(h) of the superceding indictment (Doc. 139 at p. 18);

Ground Five: Violation of Due Process - The Government breached the Plea Agreement (Doc. 139 at p. 19);

Ground Six: Ineffective Assistance of Counsel - The guilty plea was unknowing, unwilling, involuntary and/or unintelligent (Doc. 139 at p. 22);

Ground Seven: Ineffective Assistance of Counsel - The four elements of "Promoting a Commercial Sex Act Involving a Minor" were not met (Doc. 139 at p. 26);

Ground Eight: Ineffective Assistance of Counsel - Counsel failed to identify and argue the unconstitutionality of Chapter 4, Criminal History, United States Sentencing Guidelines (U.S.S.G.) at Defendant's sentencing proceedings (Doc. 139 at p. 31); and

-4-

Ground Nine: Ineffective Assistance of Counsel - Counsel failed to identify and argue the unconstitutionality of 18 U.S.C. § 3583 in Defendant's sentencing (Doc. 139 at p. 31).

III.      **TIMELINESS AND PROCEDURAL DEFAULT:**

Defendant had until June 30, 2012, to file his § 2255 motion. Such motion was timely filed on June 25, 2012. (Doc. 1).

On June 27, 2012, Defendant filed a Motion for Leave to File a Memorandum Brief in support of his motion (Doc. 89), which was granted on July 2, 2012. (Doc. 96). Defendant asked for an extension of time to file his brief on July 25, 2012 (Doc. 102), which was granted by text only order on July 30, 2012, giving Defendant until August 3, 2012, to file his brief in support of his motion.

On August 1, 2012, Defendant's brief was filed. (Doc. 105). Defendant then filed a supplement to his brief on August 8, 2012. (Doc. 108). Defendant next filed another brief in support of his motion on September 6, 2012. (Doc. 116).

The undersigned entered an Order on September 7, 2012, stating that Docs. 97, 105, 108, and 116 would not be considered by the Court, and directing Defendant to file a single brief by October 26, 2012. (Doc. 117). Defendant's brief was filed on November 27, 2012. (Doc. 139).

"Because habeas relief is an extraordinary remedy which 'will not be allowed to do service for an appeal,' significant

barriers exist in the path of a petitioner who seeks to raise an argument collaterally which he failed to raise on direct review." <u>United States v. Moss</u>, 252 F.3d 993, 1001 (8th Cir. 2001). A claim unraised on direct appeal is procedurally defaulted unless a petitioner can demonstrate (1) cause for a default and actual prejudice or (2) actual innocence. <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998).

The "Procedural Default" rule does not apply to claims of ineffective assistance of counsel. <u>Massaro v. United States</u>, 538 U.S. 500, 503-04 (2003). Thus, the Court does not believe the "Procedural Default" rule applies as to Grounds Three, Four, Six, Seven, Eight, and Nine. Nor is the Court persuaded by the Government's argument that Grounds One and Two are untimely and do not relate back. The Court believes Grounds One and Two were discussed in Defendant's original § 2255 motion and the later filings arose out of the claims advanced in the original motion.

Accordingly, the Court will address the merits of each of Defendant's grounds for relief, and will first address Grounds Three, Four, Six, Seven, Eight and Nine, which all set forth ineffective assistance of counsel claims. Grounds One, Two, and Five will be addressed thereafter, as well as whether Defendant has demonstrated cause for default and actual prejudice or actual innocence.

**IV.   <u>INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS:</u>**

-6-

To succeed on his ineffective assistance of counsel claims, Defendant must first demonstrate that "(1) 'counsel's representation fell below an objective standard of reasonableness;' and (2) 'the deficient performance prejudiced the defense.'" <u>Miller v. Dormire</u>, 310 F.3d 600, 603 (8th Cir. 2002) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). The prejudice requirement has been held to require that there be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>See</u> <u>Strickland,</u> 466 U.S. at 687-88; <u>Deltoro-Aguilera v. United States</u>, 625 F.3d 434, 437 (8th Cir. 2010). In addition, every effort should be made to eliminate the "distorting effects of hindsight" in assessing the attorney's conduct. <u>Strickland</u>, 466 U.S. at 689.

If Defendant fails to show deficient performance by his counsel, the Court does not need to proceed any further in its analysis of an "ineffective assistance" claim. <u>United States v. Walker</u>, 324 F.3d 1032, 1040 (8th Cir. 2003), <u>cert.</u> <u>denied</u>, 540 U.S. 898 (2003). Defendant's burden is a heavy one, <u>DeRoo</u> <u>v.</u> <u>United States</u>, 223 F.3d 919, 925 (8th Cir. 2000), and there is a "strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance." <u>Davis v. Norris</u>, 423 F.3d 868, 877 (8th Cir. 2005).

**A. <u>GROUNDS THREE, FOUR, AND SIX</u>: COUNSEL FAILED TO IDENTIFY**

-7-

**AND ARGUE THE "SANTOS DEFECT"[3] AS TO 18 U.S.C. §§ 1952(a)(3)(A) and 371, AND 1956(a)(1)(B)(I) and 1956(h), AND HIS GUILTY PLEA WAS UNKNOWING, UNWILLING, INVOLUNTARY AND/OR INTELLIGENT:**

**1. Grounds Three and Four:**

Defendant argues that his Sixth Amendment claim of ineffective assistance of counsel is predicated upon his counsel's highly prejudicial and wholly unprofessional failure to have identified and argued a "Profound due process defect in Petitioner's conviction for Count One of his Superseding Indictment." (Doc. 139 at p. 16). This "Santos defect," Defendant argues, has prejudiced him by convicting him of a crime that the Government could not have proven him guilty of beyond a reasonable doubt.  In support of his argument, Defendant maintains that the term "proceeds" contained in 28 U.S.C. § 1952, has not been defined by Congress, that it is therefore ambiguous, and that he would not have entered a plea of guilty to Counts One or Two had his counsel advised him of Santos.

With respect to the Santos argument, as urged by the Government, the Santos opinion determined that "proceeds" was given the ordinary meaning as well as the definition most favorable to the defendant, which is "profits." United States v. Santos, 553 U.S. 507 at 514. Following the Supreme Court's

_____

[3]United States v. Santos, 553 U.S. 507 (2008)(plurality opinion).

holding in <u>Santos</u>, Congress amended 18 U.S.C. § 1956 to define the term "Proceeds" to include gross receipts. Fraud Enforcement and Regulatory Act of 2009, Pub. L. 111-21, § 2(f)(1)(B), 123 Stat. 1617, 1618; <u>see</u> 18 U.S.C. § 1956(c)(9). Because Defendant pleaded guilty in 2010, the statute and not the <u>Santos</u> definition is applicable to his case.

Further, in this case, the Pre-Sentence Investigation Report (PSIR) reflects that Defendant's "customers were charged $200 for a one hour service and would pay either in cash, check, or through the use of a credit card. The females would retain $100 and give the other $100 to the service or they could manually run credit cards on machines provided by Mitchell." (PSIR at p. 5, ¶23). "The monies were deposited into bank accounts at Arvest or Bank of America. The funds were then used to further the conspiracy and promote the business." (PSIR at p. 5-6, ¶23). The PSIR also indicates that Defendant had four checking accounts with Bank of America and three checking accounts with Arvest Bank. (PSIR at p. 7, ¶27). Clearly, a portion of the fee paid by each customer was profit, and therefore, Counts One and Two properly alleged the distribution of "proceeds."

Based upon the foregoing, Defendant's <u>Santos</u> argument fails.

## 2. Ground Six:

AO72A
(Rev. 8/82)

With respect to Defendant's guilty plea to Counts I and II of the Superceding Indictment, Defendant must show "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

Count I of the Superceding Indictment charged Defendant with violation of 18 U.S.C. §§ 1952(a)(1)(A) and 1952(a)(3)(A), more commonly known as the "Travel Act" and 18 U.S.C. § 371. Count II charged Defendant with conspiracy to launder monetary instruments, in violation of 18 U.S.C. §§ 1952(a)(1)(A), 1952(a)(3)(A), 2422, and 1956(a)(1)(A)(I), 1956(a)(1)(B)(I); 1956(h).

Defendant argues that his counsel gave him erroneous advice on what the law required to convict him for "Promoting a Commercial Sex Act," because his counsel told him that all the prosecution needed to prove was that he "knew that escorts who worked for him had sex with clients." Defendant asserts that the law requires proof of any or all four elements which are (1) persuading; (2) inducing; (3) enticing; or (4) coercing anyone to engage in sexual relations in return for anything of monetary value. (Doc. 139 at p. 22). However, as indicated above, these are not elements of the offense that the Government must prove.

The Travel Act does not require a showing of compelled prostitution. <u>See</u> <u>e.g.</u>, <u>United States v. Baker</u>, 227 F.3d 955,

-10-

961 (7th Cir. 2000)(citing United States v. Campione, 942 F.2d 429, 434 (7th Cir. 1991). The elements of proof under the Travel Act require the Government to prove that Defendant: (1) used facilities in interstate commerce; (2) with the intent to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity; and (3) thereafter attempted to or did in fact engage in one of the proscribed activities.  18 U.S.C. § 1952; See United States v. Fetlow, 21 F.3d 243, 247(8th Cir. 1994), cert. denied,513 U.S. 977 (1994).

Defendant signed the Plea Agreement, wherein he admitted the Government could prove "beyond a reasonable doubt"  that he owned and operated a prostitution enterprise in which prostitutes would "perform sexual acts with customers under the direction and control of Mitchell...[and]...knew that the prostitutes were engaging in sexual acts for money." (Doc. 56 at pgs. 4-5). The Plea Agreement further provided as follows:

> d.  The investigation revealed that over the course of the conspiracy, Mitchell and his co-conspirators utilized banks and other financial institutions to conduct financial transactions with the proceeds of the prostitution enterprise both to conceal and disguise the nature, source, ownership and control of the proceeds and to promote the carrying-on of the prostitution enterprise. ... Prostitutes working for Mitchell were paid by customers for sexual services with cash, checks and credit cards. Mitchell charged customers $200.00 for an hour with females working for his service. The female kept $100.00 for payment of her services and Mitchell kept the

-11-

other $100.00 as his portion of each call. ...
e.  The investigation revealed that Mitchell
hired individuals to collect cash, checks and
credit card slips from the prostitutes after
calls when he was not able to do so himself. If
Mitchell drove a female to the location of a
call, he would accompany her inside and collect
payment for the call himself from the customer.
If a prostitute drove herself to the location of
a call, Mitchell would direct her to meet him
after the call in the parking lot of a gas
station or fast food restaurant so he could
collect the proceeds from the call.... Mitchell
authorized credit/debit cards for his bank
accounts in the names of other individuals that
assisted with the collection of proceeds from the
prostitutes so they could deposit the proceeds
directly into Mitchell's bank accounts or
withdraw proceeds in the event they needed to pay
a prostitute her portion of a credit card payment
or another expense associated with the
prostitution enterprise. Over the course of the
conspiracy, Mitchell and his co-conspirators
utilized proceeds from the prostitution
enterprise to facilitate the payment for the
prostitution services, to pay employees of the
prostitution enterprise and to pay various
expenses associated with the operation of the
prostitution enterprise.
f.  Over the course of the conspiracy, Mitchell
directly operated the prostitution enterprise
including conducting financial transactions for
the prostitution enterprise such as making
deposits of proceeds derived from the
prostitution business into bank accounts in the
Western District of Arkansas and subsequently
using these bank accounts to pay expenses of the
business and to otherwise promote and facilitate
the ongoing operation of the prostitution
enterprise....

(Doc. 56 at pgs. 7-9).

At the change of plea hearing, when Defendant was

represented by Greg Klebanoff, Judge Hendren asked Defendant if

he was satisfied with Mr. Klebanoff's advice and service to him,

-12-

to which Defendant responded "I am." (Doc. 99 at p. 3). The inquiry continued:

>THE COURT: And have you indeed had adequate time to talk with him?
>
>MR. KLEBANOFF: Yes, sir, I have.
>...
>
>THE COURT: ...Look at Page 17, Mr. Mitchell. And it appears to me that you signed that agreement. Did you, sir?
>
>THE DEFENDANT: Yes, sir. Last night.
>
>THE COURT: And did you read it carefully?
>
>THE DEFENDANT: I did.
>
>THE COURT: Went over it thoroughly?
>
>THE DEFENDANT: Right.
>
>THE COURT: And discussed it with Mr. Klebanoff?
>
>THE DEFENDANT: I did.
>
>THE COURT: Did anyone threaten you or force you to make this agreement?
>
>THE DEFENDANT: No, sir.
>
>THE COURT: You did it voluntarily?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Now, did anyone promise you that if you make this agreement, that this would be the end of it? Everything would go away and there would be no –
>
>THE DEFENDANT: No, sir, no promises.
>
>THE COURT: You understand that this agreement does contain certain references and so forth, but –
>
>THE DEFENDANT: Right.

-13-

THE COURT: You've not been promised that you would get no punishment or whatever, anything like that?

THE DEFENDANT: No, sir.

THE COURT: You understand, do you not, sir, that if you go ahead and plead guilty and I accept your plea, in federal court it's up to the judge to assess the punishment that's appropriate?

THE DEFENDANT: I quite understand that.

THE COURT: And I have no idea – I don't know anything about this case. It's new, and so I have no idea at this point what that punishment could be. Do you understand that?

THE DEFENDANT: I understand that.

THE COURT: I suspect Mr. Klebanoff and the government have been trying to make an educated guess as to what it might be, but nobody has represented to you that if you make this agreement, that the Court would do thus and so, have they?

THE DEFENDANT: No, sir.

THE COURT: Because if they have, they don't know about that. I don't know about that.
...

THE COURT: All right. Look with me, if you please, over deeper into the agreement. I don't intend to go through every bit of it with you, Mr. Mitchell, but I do want to touch upon some pretty important parts of it. Look at Page 4. There's a Paragraph 8 there that starts with Subparagraphs A, B, C, and so forth, that go on for several pages, and specifically over through – into Page Number 9 into Subparagraph F. So that's A – 8A through F, inclusive. Now, as I understand that, that is meant to be a statement of the facts which support the charges that are laid against you in Counts 1 and 2 in the indictment.

-14-

THE DEFENDANT: Correct.

THE COURT: Is that what you understand?

THE DEFENDANT: Yes, sir.

THE COURT: So that's an agreement with you and the government that these are the facts. That's what happened.

THE DEFENDANT: Right.

THE COURT: Well, is that true?

THE DEFENDANT: Yes, sir.

THE COURT: These what they've laid out there and what you've agreed to, that's — those are the facts which give rise to these Counts 1 and 2?

THE DEFENDANT: That's correct.

(Doc. 99 at pgs. 3-9). Judge Hendren then went on to advise Defendant of the potential punishments on each count and the consideration of the United States Sentencing Guidelines (U.S.S.G.), and then asked Defendant:

THE COURT: All right, sir. Let me ask it this way, Mr. Mitchell. Do you have any question that you want to ask of me about anything that's contained in this agreement?

THE DEFENDANT: No, sir.

THE COURT: You believe you understand it?

THE DEFENDANT: Yes, sir, I do.

THE COURT: And, Mr. Klebanoff, do you believe he does?

Mr. Klebanoff: Yes, I do, Your Honor.

(Doc. 99 at pgs. 10-11). The Court then asked Defendant further:

-15-

THE COURT: In order for me to accept a plea, I must believe that there is a proper basis for the charge against you which supports the charge and any plea of guilty that you might make to it. Now, the way we normally do that is have the United States attorney relate on the record the basis for this charge against you. This is a very lengthy statement. And you've made an agreement with them that what's in that Paragraph 8 is true and correct. Is that still the case?

THE DEFENDANT: Yes, sir.

THE COURT: So what we're doing here is, it is stipulated by the United States and by your counsel that if Ms. Triplett were to actually make that statement, that relation on the record, she would state what's in Paragraph 8 of the agreement. Do you have any objection to that?

THE DEFENDANT: No, sir.

...

THE COURT: All right. Mr. Mitchell, you've already told me that information is true and correct, and your attorney has acknowledged that that basis, if it were presented to a jury, would be sufficient for them to find guilty beyond a reasonable doubt. Now, who knows what a jury would do, but I – you heard me say that if the jury believed it and accepted it, does he believe it's sufficient to support findings of guilt beyond a reasonable doubt. Do you have any doubt about that yourself?

THE DEFENDANT: No, sir.

(Doc. 99 at pgs. 15-16).

Even more noteworthy is Judge Hendren's admonition to Defendant at the conclusion of the plea hearing:

THE COURT: ... Let me reiterate with you briefly where we've been, Mr. Mitchell. I've had several purposes in mind in this hearing. I wanted to be sure you know where

-16-

you are and what you're doing, that you're not impaired by medicine or anything like that. I wanted to be sure that you're satisfied by – with your attorney. Now, you've told me that you are. Now, think about it, sir, because I don't want you to come back in a month or two, or however long it takes for sentencing, and say, "Now, Judge, I didn't – I didn't really want to do that, and I'm not satisfied with Mr. Klebanoff, and he wouldn't talk to me, and I'm just not – I didn't – didn't mean it." So if you've got any concerns or problems about entering these pleas, please tell me now.

THE DEFENDANT: None whatsoever.

THE COURT: You're satisfied with Mr. Klebanoff?

THE DEFENDANT: I am.

THE COURT: And you understand this agreement?

THE DEFENDANT: Yes, sir.
...

THE COURT: ...Do you have any question you want to ask me about any of these things?

THE DEFENDANT: no, sir.

(Doc. 99 at pgs. 17-18).

Clearly, Defendant stipulated in the Plea Agreement, and confirmed such at the plea hearing, that the Government could prove the facts contained in Counts One and Two beyond a reasonable doubt. Moreover, "a plea of guilty admits all of the elements of a criminal charge and waives all challenges to the prosecution either by direct appeal or by collateral attack, except challenge to the court's jurisdiction." Mack v. United

-17-

States, 853 F.2d 585, 586 (8ᵗʰ Cir. 1988). In addition, Judge Hendren went to great lengths to make sure that Defendant truly agreed that the factual basis for the plea was true.

The Court is of the opinion that Defendant has failed to establish that his counsel was ineffective in his advice to Defendant regarding his guilty plea, or that his plea was unknowing or involuntary, and therefore, Defendant's arguments contained in Ground Six fail.

   B. **GROUND SEVEN: COUNSEL FAILED IN HIS DUTY TO DO ADEQUATE RESEARCH ON THE REQUIRED ELEMENTS OF "PROMOTING A COMMERCIAL SEX ACT INVOLVING A MINOR:"**

Defendant argues that he was not guilty of persuading, inducing, enticing, or coercing a minor to engage in prostitution, as required by U.S.S.G. 2G1.3. (Doc. 139 at p. 26).

First, "[t]he sentencing guidelines' enhancements are separate from the elements of the crime, and they are tailored to recognize different harms that may attend a criminal act. ...The sentencing guidelines provide the court with the flexibility to apply a force enhancement if the sex acts were not voluntary, depending on the facts. The force enhancement is not mandatory." Boschee v. United States, No. 09-4135, 2013 WL 1309440, at *12, n. 10 (D.S.D., Mar. 27, 2013).

In addition, in the Second Addendum to the Presentence Report, at page 34, the following appears:

-18-

**By the Defendant**

On May 31, 2011, Greg Klebanoff, counsel for the defendant, advised of the defendant's response to the revised presentence report:

> After examining the revised the[sic] PSR my client – against strong advise[sic] of counsel – has opted to change his defense strategy and no longer wishes to contest having knowingly used minors as prostitutes [.] Accordingly[,] the defendant hereby withdraws any and all objections to the averments set forth in the PSR regarding the knowing use of minors. The defendant further withdraws his claim that any portion of the monies he received during the course of the conspiracy charged in the instant case came from legitimate sources.
>
> In addition, my client wishes to make it clear that he stands ready and eager to provide testimony against any codefendants, including but not limited to testimony about knowing use of minors, and to assist the government in any other ways possible.

As indicated above, Defendant confirmed his withdrawal of objections regarding the use of minors at the sentencing hearing held on June 16, 2011. (Doc. 101 at p. 11). Further, at the sentencing hearing, Judge Hendren asked Defendant again if he was satisfied with Mr. Klebanoff's advice and service to him, to which Defendant replied "I am." (Doc. 101 at p. 4). Defendant also indicated he had had enough time to talk with him about the matters, to which Defendant replied "I have." (Doc. 101 at p. 4). Thereafter, Judge Hendren addressed some of Defendant's objections as follows:

> THE COURT: All right, Now, in your – in the subsequent addendum of June 8, you indicate that

-19-

you – that Mr. Mitchell I guess your advice is – withdrawing objections that relate to certain topics. And that's what you've told me in chambers, that they – any objections relating to the knowing use of minors as prostitutes, any objections concerning monies received, and I believe that's – that's essentially it. Is that correct?

MR. KLEBANOFF: It is, Your Honor.

THE COURT: All right. Now, notwithstanding that, I'd still like to go through these several objections just to make sure there's no confusion about that. And we did this in chambers. I'd like to do it on the record now. And I refer to the Addendum of April 25, 2011, including revisions and corrections as of May 17, 2011.
    Based upon our discussions, I understand that Objections 1,2,3,4 and 5 by the government have been satisfied. I've already mentioned that.
. . .

MS. TRIPLETT: ...

    With regard to the charges in this case and his willingness to cooperate in this case, during the initial interview, he denied that he knowingly employed minors as prostitutes. It isn't until the last couple of weeks that he has changed that and now admits to that and has withdrawn those such objections. So it really is a little too late at this point for him to decide now that he wants to cooperate against the defendants, as the defendants have all themselves entered their pleas and are prepared to come before the Court for sentencing.
. . .

MR. KLEBANOFF: Your Honor, the defense moves that a sentence at a downward departure and variance from the guidelines would be warranted in this case for reasons I've already stated. And also, although my – although Mr. Mitchell is conceding that he knowingly used minors and employed them as prostitutes, I believe there's not any dispute that the girls he used were much below the age of majority. They certainly weren't young enough to

-20-

appeal to the tastes of pedophiles.

And I would submit, okay, maybe this Court should sentence Mr. Mitchell as a pimp. Maybe they should even sentence him as a bad pimp. But based on the guidelines and based on the allegations of minors, it seems to me that a sentence within the guidelines would be trying to portray him as someone who pimps out little girls or would pimp out his own daughter, and he certainly isn't that. And I would just ask that the Court consider that.

(Doc. 101 at pgs. 11, 24-25). When Judge Hendren pronounced what sentence he was going to impose in this case, he asked Defendant if he had any objection to the Court's intentions, to which Defendant replied, "No." (Doc. 101 at p. 37).

It is clear from the record that defense counsel initially raised objections to the provisions involving minors, and that against counsel's advice, Defendant withdrew those objections. Defendant cannot now be heard to complain that his counsel was ineffective in this regard. Therefore, Defendant has failed to show his counsel was ineffective on this ground, and his arguments contained in Ground Seven fail.

C.    **GROUND EIGHT: COUNSEL FAILED TO IDENTIFY AND ARGUE THE UNCONSTITUTIONALITY OF CHAPTER 4, CRIMINAL HISTORY, U.S.S.G., IN DEFENDANT'S SENTENCING PROCEEDINGS:**

Defendant argues that Chapter 4, Criminal History, of the U.S.S.G. authorizes the factoring of a citizen-offender's criminal history into his sentencing, which effectuates his being more severely punished because of his "degraded status as a United States citizen." (Doc. 139 at p. 31).

-21-

It appears Defendant is arguing that by factoring in his criminal history category, the citizenship clause of the Fourteenth Amendment was violated and therefore, his counsel was ineffective for failing to investigate or raise this issue.

Consideration of a defendant's criminal history is specifically authorized by statute. See 18 U.S.C. § 3553(a)(1). In addition, "[c]ourts have 'wide discretion at sentencing as to the kind of information considered or its source.'" United States v. Dillon, 545 Fed. Appx. 593, 594 (8th Cir. 2013)(quoting from United States v. Pratt, 553 F.3d 1165, 1170(8th Cir. 2009). This is regardless of the admissibility of the information under the rules of evidence, provided that it has "sufficient indicia of reliability." Dillon, 545 F3d. Appx. At 594 (quoting United States v. Rodriquez-Ramos, 663 F.3d 356, 364 (8th Cir. 2011); Boschee, 2013 WL 1309440 at *3 (holding that the rules of evidence do not apply at sentencing hearings, and the court has broad discretion). Therefore, it would have been futile for Defendant's counsel to argue that factoring in his criminal history category was unconstitutional, and it was not ineffective assistance for his counsel to fail to do so.

The Court therefore believes Defendant's arguments contained in Ground Eight fail.

D.  **GROUND NINE: COUNSEL FAILED TO IDENTIFY AND ARGUE THE UNCONSTITUTIONALITY OF 18 U.S.C. § 3583:**

18 U.S.C. § 3583 provides for the inclusion of a term of

-22-

supervised release after imprisonment. Defendant argues that application of this statute "affects a clear degradation of his United States citizenship." (Doc. 139 at p. 31). He argues that his counsel failed to investigate his case so as to discover and argue this claim.

The Eighth Circuit has held that it would only strike down a condition of supervised release as unconstitutionally overbroad "'if its overbreadth is real and substantial in relation to its plainly legitimate sweep.'" United States v. Mefford, 711 F.3d 923, 927 (8th Cir. 2013)(quoting United States v. Thompson, 653 F.3d 688, 695 (8th Cir. 2011).

At the sentencing hearing, the following exchanges took place:

> THE COURT: ...
>
> For advisory sentencing guideline purposes in Case Number 67, Mr. Mitchell has a total offense level of 29, a criminal history category of 4, and that level and category call for advisory guidelines in the case of 121 to 151 months for imprisonment, supervised release in a range of two to three years, a fine in the range of $15,000 to $1,270,242.86, and a special assessment of $200.
> ...
>
> THE COURT:...
>
> So with respect to Case Number 67, these are my intentions. That's a level 29 and criminal history category four, and the recommended guideline range is 121 to 151 months, and we're dealing with two offenses, Count 1, which has a statutory max of five years, and Count 2 that has a statutory max of 20 years.

-23-

My intention with respect to this case, Number 67, is to sentence you to 126 months in the Bureau of Prisons. That's toward the low end of the guideline range of 121 to 151 months, and it is comprised as follows. It'll be 60 months on Count 1, which has a max of five years, so 60 months on Count 1, and 126 months on Count 2, to run concurrently. So the net effect is 126 months, but it's 60 months on Count 1 and 126 months on Count 2.

Still in Case Number 67, I'll place you on supervised release for three years with respect to each of the two counts, with conditions attached that I'll mention in a moment. And those terms of supervised release will run concurrently, and they will commence upon your release from the Bureau of Prisons....

(Doc. 101 at pgs. 35-36).

The PSIR recommended a guideline range of at least two years but not more than three years, and Judge Hendren's three years of supervised release was within the guideline range. Defendant has failed to establish that counsel was ineffective for failing to identify and argue that supervised release imposed was unconstitutionally overbroad, and therefore, his argument contained in Ground Nine is without merit.

**Based upon the foregoing, the Court believes Defendant has failed to establish his counsel was ineffective under Grounds three, four, six, seven, eight and nine, and recommends that the motion should be denied as to those grounds.**

The Court will now address the remaining grounds.

**V.**   **GROUNDS ONE, TWO, AND FIVE:**

-24-

**A.   GROUND ONE: VIOLATION OF DEFENDANT'S 6TH AMENDMENT RIGHT TO COUNSEL OF CHOICE:**

Defendant argues that he had selected Mr. Erwin L. Davis as his choice of counsel, and that "[t]he Government successfully warded Davis off of Petitioner's case." (Doc. 139 at p. 10). Defendant argues that notwithstanding Mr. Davis' acquiescence in the matter of his disqualification, the "conflict of interest," if any, had at best only been honestly "characterizable" as "potential," not actual, and that accordingly, the district court should have sought to obtain a waiver from him. He states that no effort was ever made by the Court to ascertain whether he could knowingly and intelligently desire the conflicted attorney Davis's continued representation.

Defendant contends that since the alleged conflict of interest was only potential, under the dictates set forth in United States v. Edelmann, 458 F.3d 791, 807 (2006), the district court had an obligation to avail Defendant an opportunity to formally waive his Sixth Amendment right to having a non-conflicted lawyer represent him. Defendant contends that the violation constituted a "structural error," which was so critical an error that it commands reversal on habeas review, citing Hunt v. Houston, 2008 U.S. Dist. LEXIS 24110 (D. Neb., Mar. 26, 2008).

The Government contends that the Edelmann case is distinguishable and that Mr. Davis was not disqualified from the

-25-

case, but rather moved to withdraw his representation and therefore, no disqualification/waiver obligation occurred.

First, the Court believes this ground must fail for failure to raise this issue on direct appeal. Defendant has failed to show cause for the failure to raise this claim on direct appeal or actual prejudice, or that he is actually innocent.

Even if Defendant's claim was not procedurally defaulted, the Court believes it significant that on March 26, 2013, Defendant filed a Complaint in the Western District of Arkansas, styled James B. Mitchell v. Erwin L. Davis, et al., Case no. 13-5064, against Mr. Davis and Mr. Klebanoff, for "fraud, malpractice, malfeasance, misfeasance, nonfeasance, incompetence, negligence, betrayal when [they] knowingly and intentionally conspired with prosecutors to violate Plaintiff's Constitutional rights, and theft, inter alia." (Case No. 13-5064 at Doc. 1). It would therefore seem to appear that Mr. Davis was not necessarily Defendant's "counsel of choice."

In a letter Erwin Davis wrote to the Office of Professional Conduct, dated October 8, 2012, which was filed as an Exhibit to Document 139,[4] Mr. Davis indicated that after speaking to the Assistant U.S. Attorney, he became convinced she was going to file a motion to disqualify Mr. Davis as attorney for Defendant. Rather than delay Defendant's trial while arguing the merits of

---

[4]Pursuant to the undersigned's Order entered on September 24, 2013, Mr. Davis' letter became an exhibit to Defendant's brief. (Docs. 152, 153).

such a motion, Mr. Davis visited with Defendant, and Defendant made it clear that he did not want a trial delay. Accordingly, Mr. Davis recommended attorney Greg Klebanoff be hired to represent Defendant, and Mr. Davis then set up a meeting with Defendant, Mr. Davis, and Mr. Klebanoff to discuss his representation and fee. Defendant decided to change lawyers for court appearance purposes, and wanted Mr. Davis to stay on as a consultant.

Clearly, Mr. Davis moved to withdraw when he realized the trial might otherwise be delayed, and he thought highly enough of Greg Klebanoff to recommend he be substituted as attorney of record.  Accordingly, no disqualification/waiver obligation was required.

Furthermore, Defendant's argument flies in the face of his continued confirmation that he was satisfied with Mr. Klebanoff as his counsel, as indicated above. Accordingly, the Court recommends denial of the motion relating to Ground One.

      **B.**   **GROUND TWO: VIOLATION OF DEFENDANT'S 5TH AMENDMENT DUE PROCESS RIGHTS – OUTRAGEOUS GOVERNMENT CONDUCT AND PROSECUTORIAL MISCONDUCT AND THE GOVERNMENT'S USE OF FALSIFIED EVIDENCE TO INDUCE DEFENDANT TO PLEAD GUILTY:**

Defendant argues that the Government "doggedly sought the disqualification of attorney Davis from Petitioner's criminal cases(s)" and ultimately obtained it. Therefore, Defendant maintains that the Government has "thoroughly interfered with

-27-

Petitioner's Sixth Amendment right to counsel of choice." (Doc. 139 at p. 14). He argues that the Government's conduct was "so outrageous that it shocked the universal sense of justice." <u>Id.</u> Defendant also argues that the Government made false representations to him about cooperating witnesses and others, and coerced his codefendants into giving false testimony against him.

The Government argues that Defendant's guilty plea operated as a break in the chain of events and that once a criminal defendant solemnly professes his guilt before the court "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973). The Eighth Circuit has adopted and applied the <u>Tollett</u> rational to § 2255 motions. <u>Bass v. United States</u>, 739 F.2d 405, 406 (8th Cir. 1984)(citing <u>Tollett</u>).

The Court believes this ground must fail for failure to raise this issue on direct appeal. Defendant has failed to show cause for the failure to raise this claim on direct appeal or actual prejudice, or that he is actually innocent.

Even if Defendant's claim was not procedurally defaulted, in this case, as previously noted by this Court, Defendant's plea agreement and testimony at the plea hearing clearly reveal that he affirmatively stated that he had not been subjected to

-28-

any threats or coercion, causing him to change his plea to guilty.

With respect to Defendant's argument that the Government made false representations to him about cooperating witnesses, Defendant attached four unauthenticated declarations purportedly provided by Jason M. Fedele, Conrad Dickson, Sherry Seals, and Tiffany Fedele, in support of his position.

The Government argues that in a letter to Mr. Davis dated 9/17/10, it informed Mr. Davis that several witnesses in Defendant's case had advised that Mr. Davis was a client of Defendant's business, and that the Government therefore believed such information would create a conflict of interest. (Doc. 174-1). The Government then advised Mr. Davis as follows:

> If you agree that you have a conflict of interest, please let us know and file the appropriate motion with the court to withdraw. If we do not hear back from you by Tuesday September 21, 2010 advising that you are withdrawing from the case, we will feel compelled to file a motion with the court seeking your disqualification.

(Doc. 174-1).

As noted by the Government, Mr. Davis had the opportunity to test the validity of whether a conflict existed, but instead chose to withdraw. Furthermore, Mr. Davis highly recommended Mr. Greg Klebanoff, and Defendant had an opportunity to reject his representation.

Based upon the foregoing, the Court does not believe the

-29-

Government's conduct was "outrageous" and violative of due process. Instead, the Government had a duty to bring the issue to the court's attention, and, if necessary, move for disqualification of counsel. <u>United States v. McKeighan</u>, 685 F.3d 956, 966 (10th Cir. 2012). As Mr. Davis voluntarily withdrew from representing Defendant, such motion was not necessary. Accordingly, the Court recommends denial of the motion relating to Ground Two.

C. **GROUND FIVE**: **VIOLATION OF DUE PROCESS – GOVERNMENT BREACHED THE PLEA AGREEMENT:**

Defendant argues that the Government breached the Plea Agreement by seeking another forfeiture and by prosecuting him on an additional federal information charge (Case No. 11-50033), and when the Government "induced" his plea of guilty with false promises of allowing him to cooperate with the Government to earn a reduction of sentence via a 5K1 motion and/or Rule 35 motion. (Doc. 139 at p. 19).

The Court believes this ground must fail for failure to raise this issue on direct appeal. Defendant has failed to show cause for the failure to raise this claim on direct appeal or actually prejudice, or that he is actually innocent.

Even if Defendant's claim of breach of the Plea Agreement was not procedurally defaulted, Defendant has failed to meet his burden of establishing a breach. In the Plea Agreement in this case, the Government agreed that no other federal charges,

-30-

**"which stem from the activities described in the Superseding Indictment, will be brought against the defendant in the Western District of Arkansas."** (Doc. 56 at ¶12)(emphasis added).

On March 2, 2011, Defendant waived indictment and consented to prosecution by information in Case No. 11-50033. (Doc. 1). On that same date, an Information was filed, charging Defendant with knowingly and willfully making a materially false, fictitious, and fraudulent statement and representation in an application to the Social Security Administration for the purpose of obtaining retirement payments under the Social Security Act, in violation of 18 U.S.C. § 1001(a)(2). (Doc. 2).

Also on March 2, 2011, a Plea Agreement was filed in Case No. 11-50033, wherein Defendant waived the right to be indicted and agreed to the filing of a one-count Information charging him with a violation of 18 U.S.C. § 1001(a)(2). (Doc. 4). In the Plea Agreement, Defendant stipulated to the following:

> 7.a. On or about December 8, 2008, the defendant, James Bruce Mitchell, applied for Social Security Act retirement benefits at the Social Security Administration District Office in Fayetteville, Arkansas, within the Western District of Arkansas. During an interview with a Social Security Administration claims representative, James Bruce Mitchell provided a sworn attestation that he was a self-employed escort in 2006 and 2007, but that his net income did not exceed over $400 either year. James Bruce Mitchell also attested that he did not work, or have earnings, in the year 2008 and did not expect to have earnings in 2009. On the application, James Bruce Mitchell attested to understanding his requirement of reporting income and annual

-31-

> earnings, as well as any changes in his work activity. James Bruce Mitchell owned and operated an escort service from 2006 through August of 2010 and his net income was substantially more than $400 each year. James Bruce Mitchell knowingly and willfully made a materially false and fraudulent statement and representation regarding his income to obtain Social Security retirement benefits from the Social Security Administration. From December 2008 to January 2010, the Social Security Administration paid James Bruce Mitchell approximately $11,131.00 in Social Security Act retirement benefits based upon his false statement.

(Doc. 4 at p. 4).

"To interpret a plea agreement, we apply 'general contract principles' and try to 'discern the intent of the parties as expressed in the plain language of the agreement when viewed as a whole.'" United States v. Lara-Ruiz, 681 F.3d 914, 919 (8th Cir. 2012))(quoting United States v. Lewis, 673 F.3d 758, 762 (8th Cir. 2011). "Allowing the government to breach a promise that induced a guilty plea violates due process." Id. at 761 (quotation omitted).

Defendant must show "that the Government made one of the promises he asserts and that the promise was part of the 'inducement or consideration' offered by the government in exchange for his plea." United States v. Raifsnider, 663 F.3d 1004, 1009 (8th Cir. 2011).

The language in the plea agreement in the underlying criminal case now before this Court prohibits the Government from bringing charges that "stem from the activities described

-32-

in the Superseding Indictment."

While the charge in Case No. 11-50033 was based upon the fact that Defendant earned income from his prostitution ring, it was not a part of the charges relating to the prosecution ring or the money laundering, but rather was based upon the independent action Defendant took in providing a false affidavit to the Social Security Administration. Hence, there was no breach of the plea agreement. See Short v. United States, No. 4:08CV1786CDP, 2010 WL 411103 at *4 (E.D.Mo., Jan. 28, 2010).

Further, as stated earlier, as Defendant is asserting the breach, he has "the burden of establishing it." United States v. Bartel, 698 F.3d 658, 662 (8th Cir. 2012)(quoting United States v. Raifsnider, 663 F.3d 1004, 1009 (8th Cir. 2011). Defendant has failed to establish a breach of the Plea Agreement, and based upon the foregoing, the Court recommends denial of the motion relating to Ground Five.

**Based upon the foregoing, the Court recommends that Defendant's motion relating to Grounds One, Two and Five be denied.**

VI.   <u>CONCLUSION</u>

Based upon the foregoing analysis, the undersigned recommends that Defendant's § 2255 motion **(Doc. 87)** be **DENIED in its entirety and DISMISSED WITH PREJUDICE.**

The Court also finds that a hearing is not required in this

-33-

case, as the motion, files, and record conclusively show that the movant is not entitled to relief. See United States v. Regenos, 405 F.3d 691, 694 (8th Cir. 2005).

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(b) & (c)(2). A "substantial showing" is a showing that "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998). Based upon the above analysis of Defendant's § 2255 motion, the undersigned does not believe that there is any basis for the issuance of a certificate of appealability and, therefore, recommends, that a certificate of appealability be denied.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). Given the numerous filings Defendant has submitted in this matter, Defendant is specifically directed to file only one set of objections, which should be no more than 25 pages in length. The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and**

-34-

**specific to trigger de novo review by the district court.**

DATED this 24th day of March, 2015.


/s/ Erin L. Setser

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-35-