IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                                    PLAINTIFF

V.                           CASE NO. 5:10-CR-50067-001

JAMES B. MITCHELL                                                           DEFENDANT


## MEMORANDUM OPINION AND ORDER

Currently before the Court are the Report and Recommendation ("R & R") (Doc. 233) filed in this case on March 24, 2015, by the Honorable Erin L. Setser, United States Magistrate Judge for the Western District of Arkansas, regarding Plaintiff James B. Mitchell's ("Mitchell") 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 87), and Mitchell's Objections to the R & R (Doc. 237).  In light of Mitchell's Objections to the R & R, the Court has conducted a *de novo* review of the record, focusing in particular on the portions of the R & R to which specific objections have been made, in accordance with 28 U.S.C.§ 636(b)(1)(C).  After review, the Court finds that the objections lodged by Mitchell offer neither law nor fact requiring departure from the Magistrate's findings.  Accordingly, the R & R (Doc. 233) is **ADOPTED IN ITS ENTIRETY** and Mitchell's § 2255 Motion to Vacate (Doc. 87) is **DENIED**.  Because the entire case is dismissed with prejudice, Mitchell's Motion Objecting to Magistrate's Order of Denial on Docs. 223 and 228 (Doc. 235) is **DENIED AS MOOT**.

### I. BACKGROUND

On September 15, 2010, Mitchell was charged in a twelve-count Superseding Indictment, along with two co-conspirators, Tiffney Fedele and Jason Fedele.  (Doc. 29).

On November 23, 2010, Mitchell entered into a Plea Agreement (Doc. 56) wherein he agreed to plead guilty to two of the twelve counts in the Superseding Indictment. Mitchell pleaded guilty to Count One–conspiring to use an interstate facility to distribute proceeds of an unlawful activity, and to promote, manage, establish, carry on, and facilitate such unlawful activity, namely prostitution, in violation of 18 U.S.C. §§ 1952(a)(1)(A) and (a)(3)(A) ("the Travel Act"), and 18 U.S.C. § 371. Mitchell also pleaded guilty to Count Two–conspiring to launder monetary instruments in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h). On June 20, 2011, Mitchell was sentenced to sixty months on Count One and one hundred twenty-six months on Count Two, with the terms to run concurrently. Mitchell did not appeal the judgment. On June 25, 2012, Mitchell filed the present § 2255 Motion to Vacate, subsequently amended by a Memorandum of Law in Support of his Motion, asserting nine grounds for relief. (Doc. 139). The Magistrate recommended denying the Motion on all grounds.

Mitchell now offers objections in response to the Magistrate's recommendations as to all grounds. As to grounds one, two, and five, the Court agrees with the Magistrate's determination that these arguments were procedurally defaulted because they were not brought on direct appeal. Nevertheless, the Court will address Mitchell's substantive objections, turning first to those objections that raise ineffective assistance of counsel allegations.

Mitchell objects to dismissal of grounds three, four, six, seven, eight, and nine, citing ineffective assistance of counsel. First, as to grounds three and four, he contends that his attorney, Greg Klebanoff, should have recognized that his conviction was illegal because Congress never defined "proceeds" in 18 U.S.C. § 1952 and did not define "proceeds"

within 18 U.S.C. § 1956 until after the Supreme Court's ruling in *United States v. Santos*. Thus, Mitchell argues that the term is ambiguous and should be construed in his favor, under the rule of lenity, as "profits," rather than "receipts." If the terms "proceeds" is construed to mean "profits," Mitchell maintains that his conviction for distributing the proceeds of prostitution and money laundering of the same proceeds should be vacated because he did not profit from unlawful activity. As to ground six, Mitchell asserts that Klebanoff should have recognized that his plea was involuntary and unknowing because he was induced to plead guilty based upon the Government's false statement that his co-conspirators would testify against him in a trial. As to ground seven, Mitchell maintains that the elements of promoting a commercial sex act involving a minor were not met, and therefore his sentence was illegal. As to grounds eight and nine, he contends that Klebanoff provided ineffective assistance of counsel when he failed to argue that enhancing Mitchell's sentence by considering his criminal history and adding a term of supervised release is a violation of the Fourteenth Amendment.

Next, as to ground one, Mitchell argues that he was denied his Sixth Amendment right to counsel of his choice when the Court did not conduct a "disqualification/waiver hearing" after the Court had been apprised of an alleged conflict of interest posed by Mitchell's former attorney, Erwin Davis. As to ground two, Mitchell argues that the charges against him were false due to prosecutorial misconduct in inducing him to plead guilty. Lastly, as to ground five, Mitchell asserts that the Government breached the terms of the plea agreement by bringing the charge in Case No. 5:11-CR-50033, as it stems from activities described in the Superseding Indictment in this case, because the proceeds from

the escort business are the same proceeds he had fraudulently under reported on his application for social security benefits.

The Court will address each objection in turn.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (internal citations omitted). Under the two-part test announced in *Strickland v. Washington* for determining the validity of an ineffective assistance of counsel claim, Mitchell must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Under the deficient performance prong, Mitchell must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Id.* (citing *Strickland v*, 466 U.S. at 694). If a defendant fails to show deficient performance by counsel, the Court does not reach the prejudice prong of the analysis. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003). The scrutiny of counsel's performance is highly deferential, and there is a presumption that counsel's conduct fell within the wide range of reasonable assistance. *Id.* at 689.

**1. Grounds Three and Four: Counsel Failed to Argue Defect Based on *United States v. Santos***

Mitchell raises an ineffective assistance of counsel allegation in regard to counsel's failure to raise the *Santos* argument. *See United States v. Santos*, 553 U.S. 507 (2008).

Mitchell contends that he received ineffective assistance of counsel when Klebanoff failed to argue that the Government could not prove him guilty beyond a reasonable doubt as to Counts One and Two because the term "proceeds," found in 18 U.S.C. §§1952 and 1956, is ambiguous, in that it is not defined in § 1952, and was not defined within § 1956 until after the Supreme Court decision in *Santos*. Mitchell contends that he could not have been convicted for the "distribution of prostitution regardless of which definition of proceeds is applicable (profits or receipts) because the 'agency fee' charged to customers did not include any kind of sexual activity between an escort and a customer." (Doc. 166, p. 67).

As correctly stated in the R & R, when *Santos* was decided in 2008, the federal money laundering statute at 18 U.S.C. § 1956 did not define the term "proceeds." A divided Supreme Court found that proceeds referred to profits rather than receipts, in the illegal gambling context. However, following the Supreme Court's holding in *Santos*, Congress amended § 1956 to define the term "proceeds" to include gross receipts. Fraud Enforcement and Regulatory Act of 2009, Pub. L. 111-21, § 2(f)(1)(B), 123 Stat. 1617, 1618; *see* 18 U.S.C. § 1956(c)(9). Because Mitchell pleaded guilty in 2010, the statute and not the *Santos* definition is applicable to his case.

Moreover, the presentence investigation report ("PSR"), to which Mitchell withdrew all objections, reflects that "[c]ustomers were charged $200 for a one hour service and would pay either in cash, check, or through the use of a credit card. The females would retain $100 and give the other $100 to the service or they could manually run credit cards on machines provided by Mitchell. The monies were deposited into bank accounts at Arvest or Bank of America. The funds were then used to further the conspiracy and promote the business." (Doc. 74, pp. 7-8). The PSR further notes that "[c]oncerning

money involved in the offense," Mitchell had four checking accounts with Bank of America, and three checking accounts with Arvest Bank, "[in which] investigators believe a total of approximately $352,787.00 involved transactions conducted with prostitution." *Id.* at 9. Clearly, a portion of the fee paid by each customer, which Mitchell often collected from the escorts, was profit for Mitchell. Therefore, the Court may conclude its analysis at the deficient performance prong of the *Strickland* test and need not reach the prejudice prong, since Mitchell's claim of a *Santos* defect was meritless, and it was therefore reasonable for counsel not to raise it. Thus, Mitchell's third and fourth objections are overruled.

### 2. Grounds Six: Plea was Involuntary and Unknowing

Mitchell asserts that his guilty plea was involuntary and unknowing because Klebanoff misinformed him regarding the requirements for a guilty verdict, stemming from charges arising under 18 U.S.C. § 2422—persuading, inducing, enticing, or coercing an individual to travel in interstate commerce to engage in prostitution. Therefore, he contends his Sixth Amendment rights were violated when Klebanoff allowed him to plead guilty to charges Klebanoff should have known the Government could not prove, as none of the co-conspirators or other witnesses the Government purported to use at trial would actually testify.

As a preliminary matter, the record reveals that Mitchell did not, in fact, plead guilty to a violation of 18 U.S.C. § 2422, as it was one of the dismissed charges in the Superseding Indictment. Moreover, Mitchell advances arguments contradicted by stipulated facts in his signed guilty plea. He argues that Klebanoff gave him erroneous advice on what the law required to convict him for "promoting a commercial sex act,"

6

because Klebanoff told him that all the Government needed to prove was that he "knew that escorts who worked for him had sex with clients," (Doc. 139, p. 22), or that he "'WAS AWARE' that 'minors' had worked as escorts in his business, *id.* at 23. Mitchell contends that the law requires proof of the following elements: (1) persuading; (2) inducing; (3) enticing; or (4) coercing anyone to engage in sexual relations in return for anything of monetary value.

However, Mitchell pleaded guilty to violating the Travel Act and to money laundering, not to promoting a commercial sex act. The Travel Act does not require a showing of compelled prostitution. *See e.g., United States v. Baker*, 227 F.3d 955, 961 (7th Cir. 2000) (internal citation omitted). To establish a violation of the Travel Act, the Government must prove that there was an unlawful activity—in this case, prostitution—that Mitchell had the intent to otherwise promote, manage, establish, carry on, or facilitate; and that he used interstate commerce to facilitate the carrying on of the activity or to distribute proceeds. 18 U.S.C. § 1952; *United States v. Fetlow*, 21 F.3d 243, 247 (8th Cir. 1989), *cert. denied*, 513 U.S. 977 (1994).

The factual basis within Mitchell's signed Plea Agreement provides that "the investigation revealed that the escort service was actually an interstate and intrastate prostitution enterprise which employed escorts to engage in sexual acts with customers for monetary payment and that Mitchell owned and operated the prostitution enterprise." (Doc. 56, p. 5). The Plea Agreement also states prostitutes "would perform sexual acts with customers under the direction and control of Mitchell and other co-conspirators" and that Mitchell "knew that the prostitutes were engaging in sexual acts for monetary payment." *Id.* Within the PSR, to which Mitchell withdrew all objections, he admitted that "at least

three females working for the company were known to be under the age of 18." (Doc. 74, p. 8). At his plea hearing, he confirmed that the Government could prove the facts contained in Counts One and Two beyond a reasonable doubt. (Doc. 99, pp. 15-16).

With respect to the money laundering charge, the Government was only required to prove that: (1) Mitchell conducted or attempted to conduct a financial transaction that affected interstate or foreign commerce; (2) the financial transaction involved property representing the proceeds of illegal activity; (3) Mitchell knew that the property represented the proceeds of illegal activity; and (4) Mitchell conducted the financial transaction knowing that the transaction was intended to promote the carrying on of illegal activity. *United States v. Diaz-Pellegaud*, 666 F.3d 492, 498 (8th Cir. 2012) *cert. denied*, 133 S. Ct. 235 (2012) and *cert. denied*, 133 S. Ct. 245 (2012) (internal citations omitted).

Again, Mitchell's knowledge of the illegal activity and overt acts in conducting financial transactions to promote the illegal activity are well established. It appears Mitchell mistakenly believes that to convict him for violating the Travel Act and money laundering statutes, the Government was required to prove that Mitchell persuaded, induced, enticed, or coerced the acts of prostitution. As explained previously, no such burden of proof was required of the Government. Therefore, Mitchell's argument that the Government could not prove its case against him is meritless. As it cannot be ineffective assistance of counsel to fail to raise a meritless argument, Mitchell's sixth objection is overruled.

### 3. Ground Seven: Counsel Failed to Argue the Four Elements of Promoting a Commercial Sex Act Involving a Minor Were Not Met

Mitchell argues that he was not guilty of persuading, inducing, enticing, or coercing a minor to engage in prostitution, as required by U.S.S.G. § 2G1.3. First, as noted by the

Magistrate, "[t]he sentencing guidelines enhancements are separate from the elements of the crime, and they are tailored to recognize different harms that may attend a criminal act. . . . The sentencing guidelines provide the court with the flexibility to apply a force enhancement if the sex acts were not voluntary, depending on the facts. The force enhancement is not mandatory." *Boschee v. United States*, 2013 WL 1309440, at *12, n.10 (D.S.D. Mar. 27, 2013).

In addition, the PSR states that "at least three females working for the company were known to be under the age of 18. The three individuals . . . reported that James Mitchell was aware of their age, but they had been instructed to state their age as 18 or older." (Doc. 74, p. 8). Further, one minor stated that although she placed her correct age on her application with Mitchell's escort service, Mitchell "directed her to change her date of birth to show she was 18 years old. . . . [And] at least one minor traveled from Arkansas to Missouri to engage in prostitution at the direction of James Mitchell." *Id.* at 8-9. Importantly, Mitchell withdrew all objections to facts contained within the PSR. Klebanoff submitted a second addendum to the PSR, in which Klebanoff states that against his advice, Mitchell "no longer wishes to contest having knowingly used minors as prostitutes[.]" (Doc. 74). Mitchell also withdrew his claim that any portion of the money received during the course of the conspiracy came from legitimate sources. Mitchell further confirmed his withdrawal of objections regarding the use of minors at the sentencing hearing held on June 16, 2011. (Doc. 101, p. 11). When Judge Hendren inquired if Mitchell was satisfied with Klebanoff's advice and service to him, Mitchell replied, "I am," and indicated that he had sufficient time to discuss the matters contained in the PSR. *Id.* at p. 4.

It is clear from the record that Klebanoff initially raised objections to the provisions in the PSR referencing minors. However, against Klebanoff's advice, Mitchell withdrew those objections. Therefore, Mitchell did not receive ineffective assistance of counsel.

### 4. Ground Eight: Counsel Failed to Argue that Punishing a Citizen More Severely Because of His Criminal History is Unconstitutional

Mitchell essentially argues that Klebanoff was ineffective for failing to argue that consideration of his criminal history violates the citizenship clause of the Fourteenth Amendment. However, the Magistrate correctly notes that consideration of his criminal history is authorized by statute. *See* 18 U.S.C. § 3553(a)(1). The sentence imposed here was imposed well within statutory authority, as it was issued with reference to the advisory United States Sentencing Guidelines, and with consideration of Mitchell's applicable criminal history category. Despite Mitchell's contention that his criminal history should not be considered when sentencing him for his crime, it is specifically authorized by statute. In addition, "[c]ourts have 'wide discretion at sentencing as to the kind of information considered or its source.'" *United States v. Dillon*, 545 Fed. Appx. 593, 594 (8th Cir. 2013) (quoting *United States v. Pratt*, 553 F.3d 1165, 1170 (8th Cir. 2009)).

Therefore, Mitchell's eighth objection is also without merit and will be overruled.

### 5. Ground Nine: Counsel Failed to Argue that Supervised Release is Unconstitutional

Mitchell also contends that adding a period of supervised release at the end of his term of imprisonment is a violation of the citizenship clause of the Fourteenth Amendment, and counsel was ineffective when he failed to argue this point at sentencing. However, 18 U.S.C. § 3583 specifically provides for the inclusion of a term of supervised release after

imprisonment. The Eighth Circuit has held that it would only strike down a condition of supervised release as unconstitutionally overbroad "if its overbreadth is real and substantial in relation to its plainly legitimate sweep." *United States v. Mefford*, 711 F.3d 923, 927 (8th Cir. 2013) *cert. denied*, 134 S.Ct. 242 (2013) (quoting *United States v. Thompson*, 653 F.3d 688, 695 (8th Cir. 2011)).

In this case, the PSR provided that the guideline range for a term of supervised release was between two and three years, pursuant to U.S.S.G. § 5D1.2(a)(2). (Doc. 74, p. 24, ¶ 12). When Mitchell was convicted in his subsequent case, Case No. 5:11-CR-50033, the Court placed Mitchell on supervised release for a term of three years, to run concurrently with the supervised release periods pronounced in the instant case—which were all within the guideline range. Mitchell fails to establish that the supervised release imposed is unconstitutionally overbroad, and therefore his ninth objection is without merit.

### B. Ground One: Denial of Sixth Amendment Right to Counsel of Choice

Mitchell argues that he was denied his right to counsel of choice due to the Government's counsel's improper push to remove Davis from his case. He maintains that the Court should have held a hearing and obtained a waiver from him regarding whether he would desire to have Davis continue representation.

Mitchell erroneously relies on *United States v. Edelmann*, 458 F.3d 791 (8th Cir. 2006) for the premise that a conflict of interest hearing was required when Davis moved to withdraw as Mitchell's attorney. Under *Edelmann*, the Court must hold a hearing when an attorney who continues to represent a defendant has a conflict of interest, and thus afford the defendant with the opportunity to formally waive his Sixth Amendment right to

have a non-conflicted attorney represent him. This is not the case here, where Davis sought leave to withdraw as Mitchell's attorney.

Mitchell's claim that Davis was his counsel of choice also seems disingenuous. Mitchell filed a Complaint on March 26, 2013, in the Western District of Arkansas, styled James B. Mitchell v. Erwin L. Davis, *et al.*, Case no. 5:13-CV-05064, against Davis and Klebanoff, for "fraud, malpractice, malfeasance, misfeasance, nonfeasance, incompetence, negligence, betrayal when [they] knowingly and intentionally conspired with prosecutors to violate Plaintiff's Constitutional rights, and theft, inter alia." (Case No. 5:13-CV-05064, Doc. 1). It would therefore appear that Davis was not Mitchell's "counsel of choice." Further, on September 30, 2010, Davis filed a Motion to Withdraw As Counsel in the prior case, stating that discovery had revealed that "the Government intends to call as a witness a previous client of this attorney, and that this attorney's continued representation of the Defendant in this case would likely result in a conflict of interest." (Doc. 43).

Moreover, in an October 8, 2012 letter Davis wrote to the Office of Professional Conduct, Davis indicated that after speaking to the Government's counsel, he became convinced she was going to file a motion to disqualify Davis as attorney for Mitchell, resulting in a trial delay. Mitchell made it clear that he did not want a trial delay and Davis then recommended Klebanoff be hired to represent Mitchell.

Further, this objection belies Mitchell's continued confirmation at the plea hearing that he was satisfied with Klebanoff as his counsel. Therefore, the Court believes Mitchell has failed to establish that he was denied his right to counsel of choice, and his first objection is overruled.

### C. Ground Two: Prosecutorial Misconduct

Mitchell objects to dismissal of ground two regarding prosecutorial misconduct, contending that the Government's counsel interfered with his attorney-client relations with Davis and used "false and perjured testimony to establish probable cause to indict him and lied about what witnesses would testify if Movant went to trial to induce him to plead to lesser charges he was not guilty of [sic]." (Doc. 237, p. 21). He contends that Davis was forced to withdraw from his case by the Government because they "feared Movant going to trial with an experienced attorney like Mr. Davis, who is one of, if not, the best federal criminal defense trial attorneys in Arkansas." *Id.* at 23.

However, Davis moved to withdraw from Mitchell's case, not due to improper interference by the Government, but because his representation would likely result in a conflict of interest. (Doc. 43). Davis had the opportunity to test whether a conflict of interest existed, but instead, chose to withdraw. Further, Mitchell's contention that the Government induced him to plead guilty is belied by his sworn testimony at the change of plea hearing, in which he stated that no one had forced or threatened him to sign the Plea Agreement. (Doc. 99, pp. 10-11). The Eighth Circuit has held that there is no due process violation "when a defendant is openly presented with 'unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution.'" *United States v. Stenger*, 605 F.3d 492, 498 (8th Cir. 2010) (internal citation omitted). "To constitute fear and coercion on a plea, [p]etitioner must show he was subjected to threats or promises of illegitimate action." *United States v. Goodman*, 590 F.2d 705, 711 (8th Cir. 1979), *cert. denied*, 440 U.S. 985 (1979) (internal quotation marks omitted).

Mitchell knowingly and voluntarily entered a plea of guilty to the Superseding Indictment and clearly indicated he was not threatened or coerced to enter his plea. Thus, Mitchell's second objection is without merit and will be overruled.

### D. Ground Five: the Government Breached the Terms of the Plea Agreement in the Instant Case by Bringing the Charges in Case No. 5:11-CR-50033

Mitchell objects to dismissal of ground five because his charges in Case No. 5:11-CR-50033 stem from the charges in the instant case, as the proceeds from the escort business for which he was convicted are the same proceeds he had fraudulently under reported as income on his application for social security benefits. In the Plea Agreement Mitchell signed, the Government agreed that no other federal charges, "which stem from the activities described in the Superseding Indictment, will be brought against the defendant in the Western District of Arkansas." (Doc. 56, ¶12). This issue turns on the interpretation of whether the charges brought in Case No. 5:11-CR-50033 stem from the Superseding Indictment in this case.

When interpreting a plea agreement, courts "apply general contract principles and try to discern the intent of the parties as expressed in the plain language of the agreement when viewed as a whole." *United States v. Lara-Ruiz*, 681 F.3d 914, 919 (8th Cir. 2012) (internal quotations and citation omitted). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled." *United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir. 2004) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). Mitchell must show "that the Government made one of the promises he asserts and that the promise was part of the 'inducement or consideration' offered by the

14

government in exchange for his plea." *United States v. Raifsnider*, 663 F.3d 1004, 1009 (8th Cir. 2011).

The activities described in the Superseding Indictment in the instant case relate to Mitchell's prostitution ring and money laundering. By contrast, the charge in Case No. 5:11-CR-50033 was not related to the prostitution ring or the money laundering, but rather was based upon the independent action Mitchell took in providing a false affidavit to the Social Security Administration. Hence, the charges in Case No. 5:11-CR-50033 do not stem from the activities described in the instant case, and therefore, there was no breach of the plea agreement.

Thus, Mitchell's fifth objection is overruled.

### III. CONCLUSION

**IT IS HEREBY ORDERED** that the Report and Recommendation (Doc. 233) of the Magistrate Judge is **ADOPTED IN ITS ENTIRETY** and Plaintiff James B. Mitchell's § 2255 Motion to Vacate (Doc. 87) is **DENIED** and his case is **DISMISSED WITH PREJUDICE**. Because the entire case is dismissed with prejudice, Mitchell's Motion Objecting to Magistrate's Order of Denial on Docs. 223 and 228 (Doc. 235) is **DENIED AS MOOT**. Judgment will be entered contemporaneously with this Order.

**IT IS SO ORDERED** this 8th day of May, 2015.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE